**Ren Huo HUANG, Petitioner,**

v.

**BOARD OF IMMIGRATION APPEALS, Respondent.**

No. 04–5264–AG NAC.

United States Court of Appeals, Second Circuit.

Feb. 21, 2006.

John Z. Zhang, New York, New York, for Petitioner.

Paul W. Connell, Assistant United States Attorney, Western District of Wisconsin (Stephen P. Sinnott, United States Attorney, on the brief), Madison, Wisconsin, for Respondent.

PRESENT: Hon. JON O. NEWMAN, Hon. GUIDO CALABRESI, and Hon. SONIA SOTOMAYOR, Circuit Judges.

SUMMARY ORDER

Ren Huo Huang petitions for review of the September 13, 2004 order of the BIA affirming the decision of an immigration judge ("IJ") that denied Huang's claims for asylum, withholding of removal, and relief under Article 3 of the Convention Against Torture ("CAT"). Huang alleges that he was persecuted because of his opposition to China's coercive population policy. The IJ found Huang did not demonstrate eligibility for the relief he sought. We assume the parties' familiarity with the facts of the case, its procedural history, and the issues on appeal.

Huang challenges the adverse credibility determination on which the denial of relief was based. Where, as here, the BIA summarily affirms the decision of the IJ without issuing an opinion, see 8 C.F.R. § 1003.1(e)(4), this Court reviews the IJ's decision as the final agency determination. See Twum v. INS, 411 F.3d 54, 58 (2d Cir.2005). This Court reviews the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard. See 8 U.S.C. § 1252(b)(4)(B); Secaida–Rosales v. INS, 331 F.3d 297, 306–07 (2d Cir.2003).

■ The grounds relied upon by the IJ for an adverse credibility finding where not based on substantial evidence. The IJ found it implausible that Huang's wife would be "solicited for sterilization" after her abortion, when she was apparently ineligible for the procedure for health reasons, but not still targeted for sterilization. This claim would be implausible only if the health of Huang's wife has improved to the point where she may now be sterilized. But nothing in the record suggested this to be the case; in fact, Wang testified to the contrary. The IJ also found it implausible that the government would seek Huang for sterilization when his wife remains in China. But nothing in the record suggested

that the relevant authorities are aware that Huang has left China. Thus, neither of these findings were supported by the record.

■ The IJ apparently also faulted Huang because he could not "articulate what was wrong with his wife" and because he had not submitted documents establishing a medical reason for the lack of sterilization. Huang is not a doctor, and the IJ cited nothing in the record that would suggest Huang should have been able to identify his wife's medical condition with greater clarity. Furthermore, Huang was never actually asked exactly what was wrong with his wife. *See Jin Shui Qiu v. Ashcroft,* 329 F.3d 140, 151 (2d Cir.2003) (stating that "a legal standard that empowers an IJ or the BIA to rule against a petitioner who fails to anticipate the particular set of details that the fact-finder desires (but does not request, through questions directed to the applicant) is no standard at all."). Nor did the IJ cite any reason to believe that medical evidence would be reasonably available, given that Huang's wife was still in China. *Id.* at 153 (noting that to fault an applicant for insufficient corroboration, an IJ must identify the particular pieces of missing documentation and show that the documentation was reasonably available to the petitioner).

■ The IJ also found Huang's testimony lacking because he failed to explain why the authorities had imposed a fine of 80,000 RMB on the couple, but given oral notification to the couple of the fine rather than written notification. During his testimony, however, Huang was never asked why a written notification was not issued. *See Jin Shui Qiu,* 329 F.3d at 150–53. Nor did the IJ cite to anything in the record suggesting written notifications of such fines are generally issued. The IJ further found it implausible that there have been no further repercussions against

Huang's wife, despite their failure to pay the fine. In fact, Huang testified that the water and electricity to his house were cut off. Furthermore, the IJ apparently failed to consider that the authorities' alleged continued pursuit of Huang in an effort to sterilize him might constitute the next step in enforcing the family planning regime against the couple.

■ The IJ also found it implausible that Huang, knowing that his pregnant wife could be sterilized or forced to have an abortion, would flee to the United States and leave her in danger rather than take her elsewhere to hide with her. This finding is based on impermissible speculation about what a husband in China would do in this situation. *See Secaida–Rosales,* 331 F.3d at 307.

■ The IJ also faulted Huang for failing to explain how the authorities discovered his wife. Huang's testimony on this point was less than enlightening: "[t]hey search and made contact, and found out about it." Neither the IJ nor the government, however, asked any further questions on this topic. As noted above, faulting an applicant for failing to provide detail on a particular point constitutes legal error where the applicant is given no reason to believe further detail is desired.

■ The IJ also found that Huang had failed to "tell the Court how many times government officials would come to the home to look for him after he fled China." Huang was never asked how many times government officials went to his house after his departure from China. It is possible that the IJ meant to say that Huang was unable to say how many times officials visited his house *before* he left China. It is true that in response to a question about the number of times family planning officials came to his house, Huang answered, "I forgot." However, in his asylum appli-

cation, Huang states that the officials "came to my home many times a week looking for me." Thus, if the IJ meant to refer to this portion of the testimony, her analysis had some support in the record. Because this finding would not on its own be sufficient to allow us to uphold the adverse credibility determination in light of the flaws noted above, and because we are unsure if the IJ even meant to refer to this portion of the record, we remand for further proceedings. *See Cao He Lin v. United States Dep't of Justice*, 428 F.3d 391, 395 (2d Cir.2005) (noting that we must "remand where identified errors leave us in doubt whether the IJ would have reached the same result absent the errors").[1]

■ Because Huang does not raise his CAT claim in his brief to this Court, that claim is deemed waived. *See Yueqing Zhang v. Gonzales*, 426 F.3d 540, 542 n. 1 (2d Cir.2005).

For the foregoing reasons, we GRANT the petition, VACATE the BIA's decision in part, and REMAND to the BIA for further proceedings consistent with this decision. The pending motion for a stay of removal is DENIED as moot.

---

1. The IJ also stated that "even if [Huang]'s wife did have an IUD in her body, and did undergo an abortion procedure, [Huang] has not establish[ed] that any of these family planning measures were imposed through any elements of coercion or force." Of course, the coerciveness of these measures is established by Huang's testimony to that effect unless the testimony is not credible. Our finding that the adverse credibility determination was not supported by substantial evidence thus requires a remand of this finding as well.